## Case No. 13,597.

### SULLIVAN v. REDFIELD et al.

[1 Paine, 441;[1] 1 Robb, Pat. Cas. 477.]

Circuit Court, D. New York. Sept. Term, 1825.

PATENTS—PLEADING—INJUNCTION — IMPROVEMENT —SPECIFICATIONS—TOW-BOAT.

1. On an application for an injunction to restrain the infringement of a patent right, it should be stated in the bill, or by affidavit, that the complainant is the inventor; and the bill must be sworn to. It is not sufficient that he swore to this fact when he obtained his patent.

[Cited in Young v. Lippman, Case No. 18,-160; Consolidated Brake-Shoe Co. v. Detroit Steel & Spring Co., 47 Fed. 895.]

2. To obtain the injunction, the case should be such as to leave little if any doubt in the minds

[1] [Reported by Elijah Paine, Jr., Esq.]

of the court, as to the validity of the patent; especially if it rests upon the complainant's own showing without any opposing testimony.

[Cited in Thomas v. Weeks, Case No. 13,914; Wirt v. Hicks, 46 Fed. 71.]

3. The act of the 15th of February, 1819 [3 Stat. 481], does not alter the principles on which injunctions are granted, but merely extends the jurisdiction of the circuit courts to parties not before falling within it.

[Cited in Cochrane v. Deener, 94 U. S. 782; Root v. Lake Shore & M. S. Ry. Co., 105 U. S. 192.]

4. The established rules which govern courts of equity, on such applications are, that where there has been an exclusive possession of some duration, under the patent, an injunction will be granted without putting the party previously to establish the validity of his patent at law. But where the patent is recent, and it is attempted to be shown that the specification is bad, or otherwise that the patent ought not to have been granted, the court will not take the decision upon itself, but will send the party to establish his patent at law.

5. A patent for an improvement should describe the machine in use, that it may be known in what the improvement consists.

[Cited in Whitney v. Emmett, Case No. 17,585.]

6. One had patented, "a new and useful improvement in the steam tow-boat," but the specification did not mention the invention as an improvement, but simply described a tow-boat: *Held*, that the specification was broader than the patent, and therefore bad.

[Cited in Hogg v. Emerson, 6 How. (47 U. S.) 483.]

7. The invention should be so clearly described, as to enable the public to put it in use.

[Cited in Hogg v. Emerson, 6 How. (47 U. S.) 484.]

8. The specification described the invention as "consisting essentially in attaching the packet to the steam-boat, with ropes, chains, or spars, so as to communicate the power of the engine from the towing vessel to the vessel taken in tow, and kept always at convenient distance, the manner of applying the power, varying with the circumstances in some measure:" *Held* bad for uncertainty, and as describing a well known natural power, and not an invention.

[Cited in Hovey v. Stevens, Case No. 6,745; Webster Loom Co. v. Higgins, Id. 17,342.]

This was an application for an injunction against the violation of a patent right.

The complainant stated in his bill, that having ascertained by a course of experiments, that the resistance of the water against the bow or head of a vessel, when moving, is greatly diminished by keeping her as close in the wake after another vessel as possible with convenience, and perceiving the result to be favourable to a new and useful application of steam to the conveying of passengers in a separate boat from the engine, he, on the 4th of December, 1816, obtained a patent "for a new and useful improvement in the steam tow-boat," the specification of which was as follows: "I claim as my invention, the application of steam engine power, placed in one vessel to the towing or drawing after her another vessel, for the purpose of conveying thereon passengers or merchandise, or either of them, being a new application of a known

power. The manner in which this application may be made, varies with the circumstances in some measure, but essentially consists in attaching the packet to the steamboat, with ropes, chains, or spars, so as to communicate the power of the engine from the towing vessels to vessels taken in tow, and kept always at convenient distance. The advantages attending this improvement are, that lighter and less expensive vessels may be used; the steam engine-boat may be of a smaller size; and the engine may rest on a frame bearing on her whole extent, but constructed separately from the boat; that any kind of steam engine may be used and applied, especially those of high pressure and lighter construction, without exposing the passengers and merchandise to danger; and there will be more comfort, quiet, and safety in the packet-boat; and it is obvious there may be by means of two or more boats, a convenient separation of the passengers, paying different prices. John L. Sullivan." The bill further stated, that the complainant endeavoured to introduce his invention into use as soon as possible, by putting it into practice and otherwise deriving a revenue therefrom; and particularly, that on his proposal a company was formed and incorporated in the state of Georgia, to navigate the river Savannah with steam tow-boats, to whom a prolongation of the time of the patent or exclusive privilege for such navigation, was granted by the state of South Carolina, and that the company purchased complainant's patent-right, paying him 5,000 dollars; that the success of the company was so great as to induce the formation of other companies in other states; that the state of Massachusetts granted him an extension of his term to encourage the introduction of tow-boats on Connecticut river; and that he continued his experiments on Merrimack and Charles rivers, for the purpose of improving in the art. The bill further stated, that the exclusive privilege of Livingston and Fulton had prevented the complainant from introducing his invention in this state, which he had ever been desirous of doing, until the late decision of the supreme court, declaring those privileges unconstitutional; such a decision as complainant had spent much time and money in endeavouring to procure, but without success. That as soon as possible after this decision, he tried to introduce his invention into New-York, by offering it for sale, and endeavouring to form companies, and by publications in the newspapers. The bill then charged, that the defendants [Redfield and Seymour] and others had associated for the purpose of building and running the steam tow-boat Commerce and safety barge Lady Clinton, for the express purpose of separating the passengers from the boat carrying the engine, in the mode devised by complainant, and for which he had an exclusive right; and that those boats had in June last, been put in use between New-York and Albany, under

the command of the defendant Seymour, who had thus usurped complainant's privilege, intercepting and preventing the emoluments thereof, which late disastrous accidents on board of steam-boats on the common plan, had rendered more sure, valuable, and important. The bill concluded with a prayer that the defendants might be restrained by injunction from using said boats. The motion was argued on the matters contained in the bill only.

H. D. Sedgwick and R. Sedgwick, for complainant.

C. D. Colden and S. P. Staples, for defendants.

THOMPSON, Circuit Justice. The application in this case is for an injunction to restrain the defendants and their associates from navigating the steam boat Commerce and safety barge Lady Clinton, which the bill alleges they are doing in violation of a patent right of the complainant. The application comes before the court on notice of the motion duly served. The defendants have appeared by their counsel, but have read no affidavits, or shown any thing in opposition to the motion, except what arises upon the bill itself. Nor has the complainant fortified his application with any thing except what is contained in his bill. It is presumed that the bill has been sworn to, though even that does not appear. Under this state of the case, an objection has been made, which may be considered in some measure as a question of practice, viz.: Whether the bill should not be accompanied by an affidavit, that the complainant believes himself to be the original inventor of what he claims under his patent. The bill in this case does not allege, that the complainant is the original inventor; so that admitting it to have been sworn to, there is no verification under oath, that he believes himself to be the original inventor. That it is material to his claim, that he should be the inventor, cannot be denied. It is the only ground upon which the patent right can be sustained.

It is said, however, on the part of the complainant, that the oath required to be made by the patentee, before he can obtain his patent, is at least prima facie evidence that he is the inventor or discoverer. The weight that ought to be given to this oath may depend on circumstances. The court will certainly not presume that the patentee, when he made the oath, did not believe himself to be the true inventor or discoverer. But the question it not whether at that time he was under such belief, but whether he is still under that belief when he seeks to enforce his patent right. In the present case the patent was granted in the year 1816, and the patentee may since that time have obtained such information respecting the invention, that he could not now swear that he believes himself to be the inventor of what he claims; and there may be some question whether the established practice of the

court does not require such an affidavit, when application is made for an injunction. Among the rules of practice adopted by the supreme court of the United States, for the courts of equity, in February term, 1822, it is by the 33d rule provided, that "in all cases where the rules prescribed by this court or by the circuit courts do not apply, the practice of the circuit courts shall be regulated by the practice of the high court of chancery in England." And in the case of Hill v. Thompson, 3 Mer. 624, decided in the year 1817, Lord Eldon said, that when in future an injunction is applied for ex parte, on the ground of a violation of a right to an invention secured by patent, it must be understood, that it is incumbent on the party making the application to swear, at the time of making it, as to his belief that he is the original inventor. For although when he obtained his patent he might very honestly have sworn to his belief of such being the fact, yet circumstances may have subsequently intervened, or information have been communicated sufficient to convince him, that it was not his own original invention, and that he was under a mistake, when he made his previous declaration to that effect. We think there is great good sense in this rule, and that it applies with peculiar force to a case where the patentee has slept for a great length of time upon his naked patent right without carrying it into practical use. The present case, however, cannot be considered as coming strictly within this rule. The application is not altogether ex parte. It is made on notice of the motion, and has been resisted by counsel, and was open to the hearing of opposing affidavits. We do not therefore mean to dispose of the application upon this point; although we think the reason and good sense of the rule is applicable to the case, and would suggest it as fit and proper to be adopted in all cases where the bill does not allege the complainant to be the original inventor.

Whether the complainant's patent is good and valid so as ultimately to secure to him the right he claims, is not a question for decision upon the equity side of this court. That is a question which belongs to a court of law, in which the parties have a right of trial by a jury. The equity jurisdiction exercised by the court over patents for inventions is merely in aid of the common law, and in order to give more complete effect to the provisions of the statute under which the patent is granted. And this jurisdiction should, of course, never be exercised but upon the supposition, that the applicant for the aid of the court, has a right, which has been infringed by the party against whom the injunction is prayed. It is not a matter of course to grant an injunction upon the mere exhibition of the patent, and an allegation that it has been infringed. The patent may be, upon a trial at law, prima facie evidence of the right. But in order to warrant an interference by injunction, there ought to be but little, if any doubt

in the minds of the court as to the validity of the patent, especially where the case rests entirely upon the complainant's own showing, without any opposing testimony.

It has been urged on the part of the complainant, that under the provisions of the act of congress of the 15th of February, 1819 [3 Stat. 481]. the patent itself gives to the patentee a right to claim the interference of this court by injunction. That act declares, "that the circuit courts of the United States shall have original cognizance, as well in equity as at law, of all actions, suits, controversies, and cases, arising under any law of the United States, granting or confirming to authors or inventors, the exclusive right to their respective writings, inventions, and discoveries. And upon any bill in equity, filed by any party aggrieved in any such cases, shall have authority to grant injunctions, according to the course and principles of courts of equity, to prevent the violation of the rights of any authors or inventors, &c. on such terms and conditions as the said courts may deem fit and reasonable." This act does not enlarge or alter the powers of the court over the subject matter of the bill or the cause of action. It only extends its jurisdiction to parties not before falling within it. Before this act it had been held, that a citizen of one state could not obtain an injunction in the circuit court for a violation of a patent right against a citizen of the same state, as no act of congress authorized such suit. [Livingston, v. Van Ingen, Case No. 8,420.] This act removed that objection, and gave the jurisdiction, although the parties were citizens of the same state. But in the exercise of the jurisdiction in all cases of granting injunctions to prevent the violation of patent rights, the court is to proceed according to the course and principles of courts of equity in such cases. So that the questions presented in the present case are precisely where they would have been without this act.

In support of the present application, much reliance has been placed upon the case of Livingston v Van Ingen, 9 Johns. 507, decided in the court of errors of this state. But a little consideration will show there is no analogy between the two cases. The right of Livingston and Fulton was founded upon acts of the legislature, which were clear and unambiguous. And if those acts were considered valid and constitutional, no doubt could exist as to the right. There were no facts in dispute, nor could any arise, upon which it was requisite for a jury to decide. There was, therefore, no necessity, or propriety, in sending the parties into a court of law to establish their right. That right depended solely on the constitutionality of the statutes under which it was claimed. This question belonged exclusively to the court, and not to a jury to decide; and which question, if sent to a court for trial, would, according to the course of the courts of this state, come back again for ultimate decision to the tribunal where it then was. And independent of this, Livingston and Fulton had been in the actual and exclusive enjoyment, and practical exercise of their right for at least three years.

It will be in vain to look for the circumstances in the present case to support the analogy. The right, in point of law, is, to say the least, doubtful. Some of the questions involved in the inquiry are exclusively for a jury; and the allegations in the bill, as to the practical exercise and enjoyment of the right claimed, are vague and ambiguous. In what particulars the complainant's application is open to these objections, will hereafter be noticed. We would not be understood as having formed, nor do we mean to express, any decided opinion upon the validity of the patent. We only notice the objections to it, so far as may be proper and necessary to regulate our judgment in determining, whether such a case is presented as to entitle the complainant to an injunction, according to the course and principles of courts of equity in like cases. The rule in the English court of chancery, on this subject, is: That where a patent has been granted, and there has been an exclusive possession of some duration under it, the court will interpose its injunction, without putting the party previously to establish the validity of his patent at law. But when the patent is recent, and upon an application for an injunction, it is endeavoured to be shown, in opposition to it, that there is no good specification, or otherwise, that the patent ought not to have been granted, the court will not, from its own notions respecting the matter in dispute, act upon the presumed validity or invalidity of the patent, without the right having been ascertained by a previous trial; but will send the patentee to law, and oblige him to establish the validity of his patent in a court of law, before it will grant him the benefit of an injunction. 3 Mer. 624. And we are not aware of any decisions in the courts of the United States, or in those of any of the states, which are at variance with this rule. We will proceed then briefly to notice how far it applies to the present case: and first, as to the objections taken to the patent and specification.

We have not the patent before us; and all that the bill states of its contents is, that on the 4th day of December. 1816, the complainant obtained letters patent "for a new and useful improvement in the steam tow-boat." This grant presupposes the knowledge and use of a steam tow-boat, of which the patentee does not claim to be the inventor, but his patent is for an improvement in such steam tow-boat. The bill sets out the specification, and so far as it contains a description of the complainant's invention, is as follows: "I claim, as my invention, the application of steam engine power, placed in one vessel, to the towing, or drawing after

her, another vessel, for the purpose of conveying thereon, passengers, or merchandise, or either of them, being a new application of a known power. The manner in which this application may be made, varies with the circumstances in some measure, but essentially consists in attaching the packet to the steam-boat, with ropes, chains, or spars, so as to communicate the power of the engines from the towing vessel to vessels taken in tow, and kept always at convenient distance." This specification is obviously broader than the patent. The latter is for an improvement in the steam tow-boat; and the former contains a description of the steam tow-boat itself; of which the complainant claims to be the inventor, according to his specification. The patent and specification are connected together and dependent on each other for support. The specification should maintain the title of the patent. The latter should not indicate one thing and the former describe another, as the subject of the grant. Gods. Pat. 102–106; 2 Barn. & Ald. 350. Both the language and the policy of the act of congress require that the specification should be clear, plain, and intelligible, so that others may be taught by it to make, or do the thing for which the patent is granted. The object of the specification is to inform the public, after the expiration of the term for which the patent is granted, what the invention is: and it ought, therefore, to put the public in possession of whatever is necessary to the use and enjoyment thereof. Does this specification contain any such certainty of description? It states that the manner in which the power is to be applied, varies with the circumstances in some measure. Nothing could be more vague and uncertain than this description. But it adds. "that it essentially consists in attaching the packet to the steam-boat with ropes, chains, or spars; so as to communicate the power of the engine from the towing vessel to vessels taken in tow. and kept always at convenient distance." On the argument much stress was laid on the word "attaching." It was said to signify a fixed and solid union between the two boats, which distinguished it from the ordinary towing in common use. which was called connecting the two boats by some temporary fastening. We are not aware of any such distinction between the two terms, as to draw after it such important consequences. The legal construction would be the same if the word "connecting" had been used instead of "attaching."

The patentee cannot surely claim as his invention the towing of one boat after another. But the manner of attaching the two together would seem to be the right he asks to have secured to him. If he has discovered any important improvement in this respect, it should have been described in the specification with more certainty and precision. To say that the two boats must be so attached as to be kept always at convenient distance, does not seem to be that full explanation which, after the expiration of the patent, would leave the public much wiser than they were before. What is a convenient distance, and the particular manner of attaching the one to the other, will still have to be ascertained by experience. If, according to the patent, the invention claimed is an improvement in the steam tow-boat, the specification, to be complete, should describe the one previously in use, that it might be seen clearly in what the improvement consisted, as the patent cannot cover more than the improvement claimed. These are some of the objections to the patent itself, which present such strong doubts in the mind of the court, as to its validity, that it is deemed improper to interpose an injunction until the validity of the patent has been tried at law.

Nor has there been such a possession and enjoyment of any right claimed under the patent, as to induce the court to grant the injunction on that ground. The bill contains no direct allegation that the invention has, at any time, been carried into practical operation by the patentee, or any other persons under his authority. The exertions and attempts stated to have been made for this purpose are unimportant, unless attended with success. The several acts of state legislatures alleged to have been obtained, do not show any practical use of the invention, nor can they, with propriety, be considered as showing possession of the right claimed. The only part of the bill which affords an inference that the patentee has carried his invention into practice, is that which states, that a company has been formed in Georgia to navigate the river Savannah with steam tow-boats; that they have paid him five thousand dollars for his patent right, and that the success of the company was so great as to induce the formation of other companies in other states. It is perhaps reasonable to infer, that it was intended here to state, that the success which the company met with consisted in profitably navigating the Savannah river with steam tow-boats. But, admitting this to be the inference, there is no time stated when it was put in operation. And the practical use of the invention may be too recent and questionable to call for the protecting power of an injunction. In the case of Hill and Thompson, when Lord Eldon adopted the rule before referred to on this subject, the patentee had had his patent right in operation for about eighteen months; yet this was considered too short a period to justify a continuance of the injunction. We are accordingly of opinion that the motion must be denied.