ROY J. POMEROY, Respondent, v. NEW YORK HIPPODROME CORPORATION, Appellant.

First Department, May 27, 1921.

Patents — action to recover royalties — agreement made before patent issued — patent denied in part on ground of conflict with existing patent — no consideration for agreement because plaintiff had no power to grant exclusive license — defendant not liable where no use made of device.

In an action to recover royalties alleged to be due under a license to defendant for the exhibition of a stage device of which the plaintiff claimed to be the inventor and owner, it appeared that the agreement was executed after the plaintiff had applied for letters patent; that subsequent thereto and before the defendant made any use of said device it was learned that plaintiff's device would be an infringement upon an existing patent; that thereafter a patent was issued to the plaintiff which amounted in effect to an improvement upon said existing invention, and that the defendant attempted to use said device but found it impracticable.

*Held*, that the plaintiff was not entitled to recover, for at the time the contract was executed he had no power to grant an exclusive license for the production and use of said device and there was, therefore, no consideration for the contract.

SMITH, J., dissents, with memorandum.

APPEAL by the defendant, New York Hippodrome Corporation, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 15th day of November, 1920, affirming a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, in favor of the plaintiff, and the order denying defendant's motion to set aside the judgment and for a new trial made upon the minutes.

*Nathan Burkan*, for the appellant.

*John H. Jackson* of counsel [*Harris E. Skinner*, attorney], for the respondent.

GREENBAUM, J.:

The action was brought to recover royalties alleged to be due for the first five weeks commencing on or about September 1, 1919, under a license to defendant for the exhibition of a

stage device known as a " Bubble Illusion," of which the plaintiff claimed to be the inventor and owner.

The agreement was in writing dated May 16, 1919. It first recites the following preambles:

" WHEREAS *the inventor is the owner of* [Italics ours] a certain Bubble Illusion upon which he has heretofore applied for Letters Patent in the Patent Office of the United States of America; and WHEREAS the producer desires to secure the exclusive license to manufacture and use the same as part of a theatrical production to be produced in the New York Hippodrome on or about September 1, 1919."

It then provides that the parties agree as follows:

" *First.* The said inventor hereby grants to the said producer an exclusive license to manufacture and to use the said Bubble Illusion as part of a theatrical production upon the stage of the New York Hippodrome and for no other purpose for a period beginning with the date of this agreement and extending until the completion of the run of the production to be opened in the said theatre on or about the first day of September, 1919.

" *Second.* The said producer hereby promises and agrees to pay to the said inventor beginning September 1, 1919, and continuing until the completion of the run of the said production, as royalty for the rights and licenses herein granted the sum of $50 weekly payable weekly for each and every week during the said term provided the said Bubble Illusion when constructed proves to be satisfactory to the management of the New York Hippodrome on or before September 1st, 1919."

The complaint alleges the making of the agreement, the construction of the device, its acceptance by the defendant as satisfactory prior to September 1, 1919, and the due performance of the agreement by the plaintiff. The answer sets up certain denials and three defenses which may be summarized as (1) a failure of consideration and false representations in stating that the plaintiff was the inventor and owner of the device and of the exclusive right to make, copy, use and vend such device and that it was a patentable invention, whereas in fact plaintiff had no right to grant a license owing to the grant of a prior patent to one Hanlon, which embodied the

basic features of the device in question; (2) that defendant repudiated and rescinded the license agreement and discontinued its use, and (3) that the device was not workable and was unsatisfactory.

Upon the oral argument before us plaintiff's counsel conceded that the device which was the subject-matter of this controversy was an infringement upon the Hanlon patent and that the patent finally issued to the plaintiff amounted in effect to an improvement upon the Hanlon invention.

It follows from the concession that plaintiff was not entitled to any recovery. It appears without contradiction that Morange, the owner of the Hanlon patent, notified the defendant that the use of the plaintiff's device would be an infringement upon the Hanlon patent. After this notice the defendant informed plaintiff that it would discontinue using the apparatus unless plaintiff adjusted the matter with Morange. No adjustment, however, was effected.

The proofs are that when the parties entered into the agreement, proceedings were pending in the United States Patent Office upon the application of the plaintiff dated April 30, 1919, for a patent covering all the features of the " Bubble Illusion " as they were represented to the defendant; that the claims of the plaintiff were subsequently disallowed, so far as they covered certain elements, which were embodied in the Hanlon patent, and that on March 9, 1920, a patent was finally allowed to the plaintiff to the limited extent of what may be deemed certain so-called improvements upon the prior Hanlon patent.

So far as the record before us discloses, the plaintiff did not intend to defraud the defendant in the representations made to the defendant, since the plaintiff evidently believed that he was the inventor of all the features of his " Bubble Illusion " and expected to receive a patent which would confer upon him the exclusive right to the use of the " Bubble Illusion " in its entirety, as described to defendant.

This action was commenced on October 10, 1919. At that time the Patent Commissioner had not yet taken final action upon plaintiff's application. On March 9, 1920, the patent was granted to the limited extent heretofore mentioned and on April 23, 1920, this case went to trial. The plaintiff

admitted upon his cross-examination that before the Patent Office had acted on his application, and hence before the license was granted to defendant, he knew nothing of the Morange patent.

On behalf of defendant, its general stage director, one Robert H. Burnside, through whom the negotiations culminating in the license were had, testified that plaintiff came to his office to interest defendant in the " Bubble Illusion; " that he asked the plaintiff whether it was different from other illusions of which he had heard, specifying one at the Ziegfeld Follies and another at the Greenwich Village and the plaintiff said: " It was a totally different thing." This witness also testified that although he had heard of the Hanlon device, he had never in his life seen the patent and that he did not know that plaintiff's contrivance infringed upon the Hanlon patent, until Morange spoke to him about the matter some time after the agreement for the license had been executed.

The proofs show that defendant spent a considerable sum of money in constructing the mechanism in order that it might be ready for production by September first; that notwithstanding that it was built in accordance with the drawings and specifications received from the plaintiff and in conjunction and collaboration with him, it was impossible to produce one that was both workable and safe and that after several productions the witness declared it was found to be unsatisfactory to the defendant and besides " we didn't want to have any further trouble or law suit with Morange."

The written agreement on its face distinctly declares that plaintiff was the inventor and owner of the " Bubble Illusion." It purported to grant an " exclusive license " to defendant for its use during the season commencing about September first. All that the defendant was interested in was the " Bubble Illusion " as described by the plaintiff who expected to obtain letters patent therefor.

It transpired, however, that the plaintiff had no power to grant an exclusive license for the production of the " Bubble Illusion " which was the thing agreed upon. Defendant could not lawfully use the " Bubble Illusion " without securing a further license from the owner of the Hanlon patent. There was, therefore, no consideration for the contract, even if we

assume that the agreement was not procured by the fraud of the plaintiff.

In *Herzog* v. *Heyman* (151 N. Y. 590) the court said: " It is insisted, however, that all that the plaintiffs agreed to sell, or the defendants attempted to purchase, were the letters patent No. 367,212, irrespective of the fact whether they were valid or not. It was as the plaintiffs insist, an agreement to sell their right, if any, under the letters, the defendants assuming the risk of their validity. It would, of course, have been competent for the parties to have entered into an agreement of the character suggested, but very clear evidence of such an agreement should be found before permitting a contract for the sale of letters patent to be so construed. The parties, generally, contemplate a transfer by the vendor to the vendee of an exclusive right vested in the former. ' The thing to be assigned is not the mere parchment on which the grant is written; it is the monopoly which the grant confers; the right of property which it creates ' " (citing *Gayler* v. *Wilder*, 10 How. [U. S.] 493).

*A fortiori* the rule above declared would apply in the case of a license of an alleged inventor, who when the license was granted had no patent covering the subject-matter of the license and to whom a patent for the device described was refused.

In *Bottlers Seal Co.* v. *Rainey* (225 N. Y. 369), referring to a contract under which one Horner was given the sole license and right to manufacture certain patented bottle caps, the court said (at p. 373): " But the promise to make such payments is not absolute. In legal contemplation, the enjoyment of the undisturbed use of the patent, not the mere execution of the grant, is the consideration for the royalties. The debt is not contracted until the consideration is furnished. [*Garrison* v. *Howe*, 17 N. Y. 458; *Whitney Arms Co.* v. *Barlow*, 68 N. Y. 34; *Gold* v. *Clyne*, 134 N. Y. 262.] If the right to make, use and sell the patent terminates meanwhile; if the licensor does not respect the right; if it had no right to transfer; then the duty to pay royalties ceases; the time for payment never arrives and the debt is not contracted." And in *Cross* v. *Huntly* (13 Wend. 385) we have an express declaration of the court involving a situation very much like that under con-

sideration, in which the court said (at p. 386): " From the evidence, there cannot be a doubt but that the patent in both respects is defective and void; it was conclusively shown that material parts of the machine had been in use previous to the patent, and that the machine was worked upon the same principle as machines before in operation. *Secondly.* The patent purports on its face to be granted for ' a new and useful improvement in the washing machine,' and the schedule annexed, containing a specification of the improvement, gives a description of the entire machine, without distinguishing one part more than another as belonging to the patentee as the inventor. His patent is for the entire machine, for the principal parts of which, and the mode of operation, he clearly is not entitled to the credit of profit arising from the discovery. It is said in *Evans* v. *Eaton*, 7 Wheaton, 356, that a party cannot entitle himself to a patent for more than his own invention; and if the patent be for the whole of the machine, he can maintain a title to it only by establishing that it is substantially new in its structure and mode of operation. See 1 Peters, 322, 3 Wash. C. C. R. 443.* A patent for an improvement should describe the machine in use, that it may be known in what the improvement consists. 1 Paine, 441.* In *Brunton* v. *Hawkes*, 6 Com. Law R. 593, a patent for improvements in the construction of ships' anchors, windlasses and chaincables was held void, because there was no novelty in the construction of the anchors. The patent being void, nothing passed to the plaintiff in error, and the note was given without consideration."

Plaintiff relies upon an isolated quotation from *Martin* v. *New Trinidad Lake Asphalt Co., Ltd., No. 3* (182 App. Div. 719), PAGE, J., writing: " The seventh defense is predicated upon the alleged invalidity of the patent, but a licensor cannot as a defense to the payment of royalties attack the validity of the patent any more than a tenant can defend an action for rent on the ground that the landlord's title is defective."

It will be noted in that case that the action was brought to recover royalties which had accrued under a license upon user. In this case aside from a few unsuccessful attempts

---

* See *Evans* v. *Eaton* (1 Pet. C. Ct. 322; 3 Wash. C. C. 443); *Sullivan* v. *Redfield* (1 Paine, 441).— [REP.

to produce a satisfactory working of the device there was no user and besides the defendant distinctly stated that it would not use it unless the plaintiff could settle the question of infringement with Morange, a condition that was reasonable in view of the subsequent disallowance of the vital claims in plaintiff's application to the Patent Commissioner.

The legal position of the parties is set forth in *Marston* v. *Swett* (82 N. Y. 526), in which the plaintiff granted an exclusive license to the defendants under a patent for which the defendants agreed to pay royalties. The court there stated: " We think the true rule to be deduced from the authorities is this: Where the patent is apparently valid and in force the party using it, receiving the benefit of its supposed validity, is liable for royalties agreed to be paid and cannot set up as a defense the actual invalidity of the patent. The reasons for the rule are that the party has got what he bargained for; that he cannot be allowed at the same time to affirm and disaffirm the patent; and that he cannot in this way force the patentee into a defense of his right and compel him to try it in a collateral action. While the manufacture goes on under such an apparently valid patent it is presumed to be under and in accordance with the agreement to pay royalties. If the manufacturer does not so intend, and chooses to make the patented article, not under the patent but in hostility to it, he must give notice of that intention, in order that the presumption may not attach or the patentee be misled. *But if the patent is annulled or destroyed by due and effective legal proceedings and priority of invention and a patent is awarded to another, no notice is necessary for there is no presumption or inference of manufacture under a patent judicially avoided and annulled. It ceases to exist.* [Italics ours.] The manufacture is either absolutely free, or an infringement upon the rights of the prior inventor, or in submission to his claims."

The determination appealed from and the judgment of the Municipal Court are reversed, with costs in this court and in the Appellate Term, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING and PAGE, JJ., concur; SMITH, J., dissents.

SMITH, J. (dissenting):

The license was confessedly valid to give to the defendant the right to use the improvements for which letters patent were given to the plaintiff. This right thus secured to the defendant has never been renounced by the defendant. The defendant itself may procure a license from the original patentee of the main device and still use these improvements without payment therefor, if this decision be right. As I read the evidence the defendant had full knowledge before the making of this contract, not only of the existence of the Hanlon patent, but also of its scope, and the contract must be read in view of that fact. I, therefore, dissent.

Determination and judgment reversed, with costs and disbursements in this court and in the Appellate Term, and the complaint dismissed, with costs.