APRIL PRODUCTIONS, INC., Respondent, *v.* G. SCHIRMER, INC., Appellant.

First Department, June 8, 1954.

*Arthur F. Driscoll* of counsel (*Edward C. Raftery, Paul D. O'Brien* and *Milton M. Rosenblum* with him on the brief; *O'Brien, Driscoll & Raftery,* attorneys), for appellant.

*Lionel S. Popkin* of counsel (*William Klein* with him on the brief; *Klein & Lund,* attorneys), for respondent.

BREITEL, J. Plaintiff recovered judgment for accumulated royalties under a letter agreement, dated September 14, 1917. Defendant appeals.

The nub of the case turns on the duration of the 1917 agreement. It contained no expressed term, but provided that defendant was entitled to publish an English adaptation of a German musical play, " Maytime ", and for this right defendant was to pay a royalty on each published copy of the play or selections from the play.

When the agreement was made Sam S. & Lee Shubert, Inc., apparently an affiliate of plaintiff's predecessor, held an annually renewable agreement from the German owner to reproduce an

English adaption of the play, together with the right to interpolate new musical numbers. At the expiration of the agreement or on default by the Shuberts, all rights would revert to the German owner. The musical play was a " hit " in 1917, when the agreement in suit was executed.

Defendant was and is a well-known musical publisher. It faithfully paid the royalties due under the agreement until the copyrights entered in defendant's name expired in 1945. In 1946, defendant made an agreement with the author of the interpolated music, Sigmund Romberg, and renewal copyrights were taken out by Mr. Romberg, and assigned to defendant. Since the expiration of the earlier copyrights in 1945, defendant has declined to pay the royalties.

It is significant in evaluating the background for these arrangements that Mr. Romberg was retained by the Shuberts to perform his services. He was expressly hired on a salary basis for the purpose of composing the incidental music and songs, which have become the subject of this litigation. It is these songs and selections which have retained their popularity through the years. They were consequently the product of an employment arranged for and paid for by the Shuberts.

There can be no question that the Shuberts and the publisher could have agreed on any term for the payment of royalties. The period could have been less than the term of the copyright, for the term of the copyright, or for a period extending beyond the term of the copyright. Indeed, the parties could have agreed upon a lump sum payment, or installments, or for royalties of indefinite duration, in each case as consideration for the right to publish the musical selections, which right the Shuberts at the time had the power to extend (*Ehrlich* v. *Jack Mills, Inc.,* 215 App. Div. 116, affd. 248 N. Y. 598).

The publishers insist that the term for the royalties is limited to the term of the original copyright. There is no such provision in the agreement. Plaintiff insists that the term for the royalties is indefinite, so long as defendant publishes the musical selections. Plaintiff relies on the failure of the agreement to specify a terminal date.

There is nothing in the agreement or in the status of the parties at the time of the agreement to indicate that the royalties to be paid were dependent upon the statutory copyright to be later obtained. The word royalty is not so limited in definition (*Matter of Elsner,* 210 App. Div. 575, 578; Bouvier's Law Dictionary [Rawle's 3d Revision] Royalty, p. 2975; 37A Words &

Phrases [Perm. ed.], Royalty, p. 597). Authorities which determine that royalties are no longer due, because of a failure of consideration in supplying an exclusive license as required by the agreement for royalties, are not applicable. (E.g., *Bottlers Seal Co.* v. *Rainey,* 225 N. Y. 369, and *Pomeroy* v. *New York Hippodrome Corp.,* 197 App. Div. 114.)

Consequently, to fix a term for the royalties in the 1917 agreement is to write into the agreement a term which the parties did not provide. That we may not do unless it is required as a matter of necessary implication. But we may not imply such a term; for it was as reasonable for the parties to intend and contract for indefinite royalties as it was for them to provide royalties limited to a period. The basic play was a " hit ". The burden of royalties would always be related to the success of publication. The fewer the copies sold, the lighter the burden. The converse would be equally true, and for this the parties would very much wish.

The renewal of the copyrights by agreement with Sigmund Romberg, the composer of the interpolated selections, does not change the picture. His co-operation was required as a matter of Federal statute. That necessity, in the event of renewal of the copyrights, was always foreseeable, and is not the question in this case. The issue here is whether the publishers agreed to pay a royalty of indefinite duration for the privilege of publication of selections from a musical hit. That latter consideration the publishers received in 1917, and three decades later, as a consequence in part at least, they were still the publishers. What incidential arrangements they have been obliged to effect to continue their publication is immaterial, so long as it is not due to any default or failure on the part of the Shuberts, who extended to them their initial opportunity to publish the music from the play " Maytime ".

On parallel reasoning, the later termination of the agreement between the Shuberts and the German owner in 1942, by court decision, does not affect the bargain made in 1917. The learned Special Term found and we agree, that bargain was for royalties for an indefinite duration, in consideration of the initial right to publish the play and selections therefrom. Moreover, the publishers assumed as much, because they continued to pay royalties after the 1942 termination of the agreement between the Shuberts and the German owner, and until the copyrights expired in 1945.

There is a procedural issue in the case. The action was brought in equity, but the cause of action made out was one

at law, for breach of contract entitling plaintiff to money damages. Under some circumstances this would merit reversal of the judgment and dismissal of the complaint (*International Photo Recording Machs.* v. *Microstat Corp.*, 269 App. Div. 485; *Ehrlich* v. *Jack Mills, Inc., supra*). Candor requires that we confess some discordance in the precedents whether the complaint should be dismissed, whether it should not, and whether the case should be sent to the law side for trial (See 3 Carmody on New York Practice [2d. ed., 1931], § 898, and the cases cited; 30 C. J. S., Equity, § 67, especially pp. 420, 421; 19 Am. Jur., Equity, §§ 125, 129, 135). However, there was no prejudice to defendant in the instant case. The right to a jury trial is hardly significant, since the case turns on the interpretation of the written agreement, an issue properly determinable by the court alone. True, if treated as an action at law, damages could be computed only to the date of the beginning of the action, rather than to the date of trial, as was done here. But this is not a right derived from a principle of justice. It derives rather from the forms of procedure. And forms of procedure should not serve to frustrate a result just and clear on the face of the matters proven. That we consider to be the spirit and effect of section 111 of the Civil Practice Act. This becomes particularly the correct result when defendant has stipulated, as it has here, the amount of the accrued royalties to the date of trial. This is not an instance where a party has slept on his rights and the Statute of Limitations has run on a part of his claim. But if the complaint were dismissed the effect would be the same. Plaintiff may have mistaken its remedy, but that is all. Equity should not effect an inequity by dismissing the complaint for merely technical reasons, although the right to a remedy is clear. Moreover, equity should have, and has, the power to render the appropriate judgment, regardless of technical labels, so long as its jurisdiction was properly couched in the first instance and it is retained.

We do not consider that the holding in the *International* case (*supra*) requires a different result. In that case plaintiff sought reformation of the contract, and such moneys as would be due under the contract as reformed. " It did not plead a cause of action for damages at law under the contract as it was written." (P. 490.) In the instant case plaintiff alleged and relied upon the terms of the 1917 agreement, and sought (in addition to certain equitable relief to which it was not entitled) an accounting for the royalties due. Thus, while in the *International* case

a recovery of judgment upon the original unreformed contract was arguable outside the scope of the pleadings, the complaint here clearly tendered issues relating to construction of the pleaded agreement, and to liability for royalties accrued thereunder.

In the *International* case (*supra*) it was argued that there were possible defenses or counterclaims available to defendant in an action at law which were not presented by the pleadings or litigated at the trial. Such a contention cannot be made here, as the issues of fact and law tendered under the equity complaint are identical with those resolved under the breach of contract theory upon which this case was decided. Also, as indicated, there is no issue as to the amount of damages. It is difficult to conceive how the defendant, fairly apprised of the plaintiff's claim by the complaint in equity, would be surprised, confused or prejudiced. Moreover, the potential for confusion in the *International* case was compounded by the fact that the plaintiff discontinued an action at law in the City Court in order to bring the action in equity.

Finally, we are not limited by a jurisdiction of courts. The distinction between courts of equity and of law was long ago abolished insofar as the jurisdiction of courts is concerned (Civ. Prac. Act, § 8). We continue to be limited in a proper case by those forms of procedure that bear a rational relationship to the justice they are intended to effect. But where, as here, the form serves no useful purpose, and indeed would work unnecessary and unjust injury, we are permitted to and should disregard it. (See *Westergren* v. *Everett,* 218 App. Div. 172, 177, and *Thomas* v. *Schumacher,* 17 App. Div. 441, affd. 163 N. Y. 554.)

The judgment appealed from should be affirmed, without costs.

CALLAHAN, J. (dissenting). This appeal presents two questions, one substantive and the other procedural.

The substantive issue involves the construction of a contract. We think that the surrounding circumstances must be considered for a proper understanding of the agreement in suit. The material facts are as follows: Plaintiff is the successor in interest of Shubert Theatrical Company, which under an agreement, dated February 19, 1917, obtained from one Hans Bartsch, the right to produce in America a play known as " Maytime " and derived from the German " Wie Einst Im Mai ". Shubert was to have the exclusive license to translate and produce the play in America for the 1916-1918 seasons, with a

proviso that the term was to be automatically renewed from year to year during the life of the American copyright. Upon the expiration of this agreement, the play was to revert to Bartsch, including the right to any American adaptations.

New music was written for the American play by Sigmund Romberg and Rida Johnson Young.

Thereupon Shubert entered into the disputed contract with defendant. This was in letter form, dated September 14, 1917, wherein defendant agreed to publish the music of the play and pay Shubert a specified royalty on the sale of each copy, a percentage on all mechanical instruments using the numbers, and a royalty for each orchestral selection of the music. Payments were to be made quarterly. Defendant, as agent, obtained American copyrights for the new music of Romberg and Young.

The issue in the case concerns the duration of the agreement of September 14, 1917. It contained no express provision as to duration. The principal, if not the only clue, furnished by the contract itself is found in the use of the word " royalty ". We attribute an important significance to this term. We think that it indicates an understanding for payments by a licensee to a licensor, and thus conclude that the obligation to make such payments would end when the licensee's privileges terminated. (*Bottlers Seal Co.* v. *Rainey,* 225 N. Y. 369; *Pomeroy* v. *New York Hippodrome Corp.,* 197 App. Div. 114.) This would seem to be what the parties intended.

It appears that Bartsch in 1942, as the result of litigation, recovered judgment divesting Shubert of all rights to produce the play and terminating the agreement of February 19, 1917.

The American copyrights to the music expired in 1945. They were renewed by Romberg and the Estate of Mrs. Young in their own behalf. Defendant thereafter made a new agreement with them for a license to publish the music.

It is our view that, if not in 1942, then at least in 1945, Shubert and plaintiff lost the right to obtain royalties from defendant, and the contract of September 14, 1917, is to be construed as having expired. It would seem to us to be an unreasonable construction that compelled defendant to pay " royalties " after the licensor ceased to have any right in or authority over the property. As all royalty payments due up to 1945 have been paid, we find that plaintiff has no cause of action.

The procedural question is whether the plaintiff may recover a money judgment, including damages up to the year 1953, in an action commenced on the equity side of the court in 1947,

where the trial court has found that there was no right to equitable relief, but that the plaintiff was entitled to damages for breach of its contractual right to collect royalties. There was no right to an accounting because no fiduciary relationship existed between the parties. We think a mere statement of the proposition discloses that the proper answer should be in the negative, and that the complaint should be dismissed. (*Jackson* v. *Strong*, 222 N. Y. 149, 153; *International Photo Recording Machs.* v. *Microstat Corp.*, 269 App. Div. 485.)

The judgment appealed from should be reversed, with costs to the defendant, and the complaint dismissed.

BASTOW and BOTEIN, JJ., concur with BREITEL, J.; CALLAHAN, J., dissents and votes to reverse and dismiss the complaint, in opinion, in which DORE, J. P., concurs.

Judgment affirmed, with costs.

Republished decision, June 15, 1954.

Judgment affirmed, without costs. Opinion by BREITEL, J.; DORE, J. P., and CALLAHAN, J., dissent and vote to reverse and dismiss the complaint, dissenting opinion by CALLAHAN, J. Order filed.* Present — DORE, J. P., CALLAHAN, BREITEL, BASTOW and BOTEIN, JJ.

---

* Also printed 283 App. Div. 1037.— [REP.