(17 App. Div. 441.)

THOMAS et al. v. SCHUMACHER et al.

(Supreme Court, Appellate Division, First Department.   May 7, 1897.)

1. ASSIGNMENT—VALIDITY—BALANCE TO BECOME DUE.
      One E. assigned to plaintiffs "all moneys due us by [defendants],—balance on account." At that time the account between E. and defendants showed a balance against E., but defendants held drafts drawn by E. against shipments of cotton to an amount exceeding such apparent balance. The course of dealing was for defendants, on presentation of bills of lading for cotton shipped by E., to advance to him the amount paid for the cotton, and charge it to his account, and E. would then draw on the consignees, and send the drafts to defendants, whereupon defendants would attach to the drafts the proper bills of lading, sell them, and credit E. with the pro-

ceeds. Defendants testified that the account had run for a number of years, and there was hardly an instance where there had been a balance in favor of E. *Held*, that E. intended, by the assignment, to transfer to plaintiffs the balance which would be to his credit after the proceeds of the bills of exchange held by defendants had been credited to his account.

2. BILL OF SALE—TRANSFER OF ACCOUNT—NECESSITY.

A transfer of a balance due to a citizen of Georgia from a citizen of New York on a running account is not "a bill of sale of personalty," within the provisions of a Georgia statute requiring such bills of sale to be filed.

3. DISMISSAL—MISTAKE AS TO REMEDY.

An action for an accounting in equity will not be dismissed on the ground that plaintiffs had an adequate remedy at law.

Appeal from special term, New York county.

Action by Landon A. Thomas and Frank E. Fleming, composing the firm of Fleming, Thomas & Co., against Charles Schumacher and others, for an accounting. The complaint was dismissed, and plaintiffs appeal. Reversed.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

Howard S. Gans, for appellants.
George W. Seligman, for respondents.

INGRAHAM, J. On the 7th day of December, 1891, one Ernst, a resident of the state of Georgia, and doing business there under the name of Potter & Co., executed and delivered to the plaintiffs an instrument as follows: "Augusta, Ga., Dec. 7, 1891. For value received, we hereby transfer and assign to Fleming, Thomas & Co. all moneys due us by C. Schumacher & Co., of New York,—balance on account," and signed "Potter & Co." On the same day Ernst delivered to the plaintiffs, who are also residents of the state of Georgia, an order on the defendants, which was as follows: "Augusta, Ga., Dec. 7, 1891. To C. Schumacher & Co., New York: Please pay Fleming, Thomas & Co. or order the balance due us on account, and oblige, Potter & Co." The defendants, a firm of bankers doing business in the city of New York, were correspondents of Ernst, and had been in the habit of acting as his agents in New York for the sale of bills of exchange drawn by Ernst representing cotton shipped by him to England, to which bills of exchange were annexed bills of lading of the cotton. On December 7, 1891,—at the time these instruments were executed and delivered,—the account between Ernst and the defendants showed that Ernst was indebted to the defendants in a sum exceeding $10,000. The defendants, however, held drafts drawn by Ernst upon cotton shipped by him to Europe, with the bills of lading for such shipments, to an amount largely exceeding the amount of such indebtedness, which bills of lading had been sent by Ernst to the defendants for sale by the defendants; and such drafts, with bills of lading annexed, were held by the defendants as security for the advances made by the defendants to Ernst, which, at the time of this transfer, as before stated, had exceeded the credits on the books of the defendants by upward of $10,000. The defendants subsequently sold these drafts with the bills of lading annexed, and upon

the final settlement of the account it appeared that Ernst would have been entitled to receive from the defendants upward of $5,000.

The first question presented on this appeal is whether these two instruments executed by Ernst and delivered to the plaintiffs on the 7th day of December, 1891, were sufficient to transfer to the plaintiffs the right to receive the balance of the account between Ernst and the defendants when the drafts were sold, and Ernst entitled to the credit. Let us examine for one moment the relation that existed between the defendants and Ernst at the time these transfers were made. What right had Ernst, as against the defendants, at that time? Ernst had transmitted to the defendants drafts drawn upon persons in Europe. Annexed to those drafts, and as security for their payment, were bills of lading of merchandise shipped by Ernst to the drawees of the drafts. The defendants held these drafts, as agents of Ernst, for sale. The proceeds realized upon the sale of the drafts were to be received by the defendants, and credited to Ernst's account. The method by which this business was done was as follows: When the bills of lading for cotton shipped by Ernst were presented to the defendants in New York what appears to have been the amount paid for the cotton shipped would be paid by the defendants and charged to Ernst. Ernst would then draw bills of exchange upon the consignee of the cotton, and send such bills of exchange to the defendants, whereupon the defendants would annex to such bills of exchange the proper bills of lading, sell the bills of exchange to bankers in New York dealing in foreign bills, and credit the proceeds to Ernst. Thus the defendants, acting as agents for Ernst, made advances to Ernst to enable him to pay for cotton shipped, receiving the bills of lading for such cotton as security, and then, annexing to bills of exchange drawn by Ernst upon the consignees of the cotton the bills of lading so received, would sell such exchange, and credit the proceeds thereof to Ernst in his account with the defendants. Now, it is quite clear that the parties to this arrangement understood that the defendants were in all instances to sell this exchange, and credit Ernst with the proceeds. While, technically, the legal title to the cotton represented by the bills of lading was in Ernst before as well as after the sale of the drafts to which such bills of lading were annexed, practically these bills of lading were in the hands of the defendants with the intention that they should be annexed to bills of exchange, and sold for the account of Ernst; the proceeds to be applied by the defendants on account of the advances that they had made, the balance of the proceeds of such sale to be payable to Ernst. We are not now considering the legal right that those defendants would have had in a controversy between themselves and Ernst, which would depend upon the condition of the account between them. The defendants, as to this balance due, are mere stakeholders, and we are considering the legal effect of an instrument by which Ernst attempted to transfer something to the plaintiffs, and we must determine what that instrument, considering the circumstances surrounding the transaction, transferred, and what the parties intended should be the legal effect of the transfer.

One bit of evidence of the defendants seems to be important in de-

termining what was intended by this transfer. The defendant Schumacher testified: "And in this connection we kept a running account with Potter & Co. [Ernst] going over a number of years. The balance seldom was in their favor. I can hardly remember the time when it was." Thus it appears that upon a consideration of the account and of the way the business was transacted, if credits were only given to Ernst when the bills of exchange were sold, there never was, during the time the business was continued, a sum of money to the credit of Ernst. But, if Ernst was credited with the bills of exchange drawn on the consignees of the cotton at or as of the time when they were delivered to defendants for sale, then it would be quite clear that there would be a balance to the credit of Ernst. The testimony shows that after so crediting such bills of exchange in the hands of the defendants at the time of the execution of this transfer, which bills they subsequently sold, and the proceeds of which they received, there would be a balance due to Ernst from the defendant. Now, what was it that this instrument, as between these plaintiffs and Ernst, transferred? Did the parties intend to transfer only the amount due upon the books of the defendants, which amount was arrived at by crediting to Ernst the money actually received by the defendants upon the bills of exchange? The evidence of the defendants first shows that there was seldom, if ever, any such balance, and, if the parties intended to transfer anything by the instrument, it could not have been such a balance. Did Ernst and these plaintiffs intend or understand, when this transfer was executed and delivered, that what was to be transferred was the sum of money that would be due from the defendants to Ernst when the defendants had complied with their agreements, sold the bills of exchange, and had credited Ernst with the proceeds thereof, treating such bills of exchange as credits to which Ernst was then entitled? As before stated, neither Ernst nor the defendants treated these bills of lading, or drafts to which the bills of lading were attached, as the property of Ernst, to be held by the defendants upon Ernst's order; but, on the contrary, it is clear that the defendants had the right to dispose of them for Ernst's benefit, and that it was the proceeds after paying Ernst's indebtedness to them to which Ernst was entitled. In considering what he was transferring to the plaintiffs, Ernst evidently looked at this account between himself and the defendants as though the defendants were to credit him with the bills of exchange when they were received by the defendants on Ernst's account, instead of crediting Ernst with the amount received after the sale of such bills of exchange; and it was the balance that would result from crediting him with the amount of the bills of exchange when the bills were received by defendants for sale which, it is quite evident, he intended to transfer to the plaintiffs. Upon the face of the instrument, and considering the methods by which the business between Ernst and the defendants was done, the intention of Ernst is apparent. What is there, then, to prevent us from giving effect to it? Nothing, except that technically, according to the method of bookkeeping adopted by the defendants, there did not appear to be a balance due to Ernst at the time of the transaction, although, in effect, considering the sub-

stance, and not the form, of the transaction, an indebtedness existed
in favor of Ernst against the defendants, the correct amount not be-
ing ascertainable until a future time, and it not being payable until
such future time, viz. when the bills of exchange had been actually
sold, and the exact amount of the proceeds of the sale ascertained.
There existed, however, an obligation on behalf of these defendants
to sell the bills of exchange, and to apply the balance of the proceeds
over and above the amount due to the defendants for the benefit of
Ernst. That obligation existed when these bills of exchange were
delivered to defendants. When we consider the circumstances sur-
rounding the transfer, and the methods by which the business be-
tween the defendants and Ernst was carried on, I think it clear that
it was the intention of Ernst to transfer to the plaintiffs that obliga-
tion, or the right to enforce that obligation, as against these defend-
ants; that the instruments were sufficient for that purpose, and that
that right vested in the plaintiffs, and that when the amount was
subsequently ascertained and became due the plaintiffs were entitled
to call upon the defendants to account to them for the sum to which
Ernst was entitled. The instrument itself transfers and assigns to
the plaintiffs "all moneys due us by C. Schumacher & Co., of New
York,—balance on account." The language used is much broader
than a mere transfer of what at that time appeared by bookkeepers'
entries to be payable from the defendants to Ernst, and, we think,
is sufficiently broad to include all obligations in favor of Ernst
against the defendants; and it was evidently the intention of Ernst
to transfer such obligations of the defendants in his favor to the
plaintiffs.

We think, therefore, that the learned court below was in error in
determining that there was no obligation of the defendants in favor
of Ernst at the time of the transfer. It is true that there was noth-
ing payable from the defendants to Ernst, but, as before stated, there
did exist an obligation of the defendants, as to these bills of ex-
change in the hands of the defendants, by which Ernst was entitled
to be credited with the amount realized therefrom, and that obliga-
tion was what it was intended to transfer, and what these instru-
ments did transfer, to the plaintiffs. While it is true that Ernst
might have had the right, before the transfer, upon tender to the de-
fendants of the amount of the advances made by them, to have trans-
ferred back to him these bills of lading and bills of exchange, he
could waive that right to demand back the possession of these instru-
ments, and could insist upon his contract or agreement with the de-
fendants being carried out, by which the defendants were bound to
sell these bills of exchange, and credit him with the proceeds there-
of; and, enforcing this right, there would be a sum of money which
the defendants would be bound to pay to Ernst, and which would be-
come payable upon the receipt by the defendants of the proceeds of
the bills of exchange. We think this position fully sustained by the
authorities. In Brill v. Tuttle, 81 N. Y. 454, when the order in that
case was delivered, there was nothing due to the transferror from
the defendant, but it was held that, considering the surrounding cir-
cumstances, it was the intention of the parties to transfer the fund

when it should become due; and the same principle was applied in Cleaner Co. v. Smith, 110 N. Y. 90, 17 N. E. 671.

Two other reasons are suggested by the learned counsel for the respondents as justifying the dismissal of this complaint. They were not passed upon by the court below, but the complaint was there dismissed upon the ground that the instruments before referred to were not sufficient to transfer to the plaintiffs any right against the defendants. We do not think that we would be justified in sustaining this dismissal upon either of these grounds. The first is that under a statute of the state of Georgia these transfers were void, because they were not filed in that state, as required by such statute. The property assigned was an obligation on the part of citizens of the state of New York to account to Ernst for property in their hands. We think it clear from the evidence that the transfer of such an account is not a "bill of sale of personalty," within the provisions of that statute. It is quite evident that the statute refers to transfers of tangible personal property located within the state, and not to the transfer of choses in action. The defendants also take the objection that to enforce this obligation an action at law was necessary, and not an action for an accounting in equity; and that the plaintiffs have a complete and adequate remedy at law against these defendants, and no standing in equity to maintain this action. If this point, however, is well taken, it would not justify a dismissal of the complaint. Upon the facts proved, the plaintiffs, if the owners of the demand against the defendants, would be entitled to a judgment; and the fact that they had demanded the wrong relief in their complaint, or demanded relief to which they would not be entitled, would not justify the court in dismissing the complaint. If they brought the action to trial as an equity case, where, upon the facts alleged, plaintiffs were only entitled to a common-law judgment, and the defendants insisted that the action should be tried before a jury, then, upon a demand that the case be sent to a jury for trial, the court would be bound to so direct; or if, at the end of all the testimony, the court should be of the opinion that it was an action at law, and not in equity, the court could then refuse the equitable relief, and send the action to be tried at the trial term before a jury. There was no reason, however, why the plaintiffs should be turned out of court, under our system of practice, because, though they alleged facts which entitled them to relief, they asked for the wrong relief, or brought the case on for trial at the wrong term of the court.

On the whole case, we think that the judgment below should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.