### KLINGBEIL v. PUBLIC BANK.

(Supreme Court, Appellate Term.   March 23, 1911.)

ASSIGNMENTS (§ 73*)—BANK ACCOUNTS—PROPERTY TRANSFERRED.

  An assignment of assignors' interest in a bank account, which according to the pass book showed a credit, but which was actually overdrawn, did not transfer, as against the assignors' trustee in bankruptcy, book accounts deposited as collateral to secure assignors' indebtedness to the bank.

  [Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 139–142; Dec. Dig. § 73.*]

  Seabury, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Bernard Klingbeil against the Public Bank. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before SEABURY, PAGE, and BIJUR, JJ.

Henry Fluegelman, for appellant.
Samuel Shimans, for respondent.

BIJUR, J.   On October 3, 1908, L. L. Fiber & Co., by a separate instrument in writing, and also by indorsing such agreement on its pass book with the defendant bank, did "sell, assign, and set over unto B. Klingbeil all our right, title, and interest in and to the annexed

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

account at Public Bank." Although the pass book on that date showed a net credit of some $1,400, the account had actually been overdrawn about $7. The credits on the account were the result of loans by way of discount, to secure which Fiber & Co. had assigned to the bank a number of book accounts. Seven days later, to wit, on October 10th, a petition in bankruptcy was filed against Fiber & Co. The trustee in bankruptcy, having demanded a transfer to him of the assets of Fiber & Co., the bank, on December 10th, pursuant to an order, paid over to him $62.31, which it had collected in liquidation of some of the book accounts beyond the amount of Fiber & Co.'s indebtedness to the bank, and transferred to him the surplus book accounts, of a face value of $173.25.

In this action for a recovery of this cash and the value of the book accounts, the crucial question was whether the assignment above set forth constituted a transfer to Klingbeil of the book accounts above named, over the amount of Klingbeil's indebtedness to the bank, amounting at the day of the assignment to substantially $235.56. The learned court below was of the opinion that it was only reasonable to assume that the assignors were aware of the condition of their account with the bank, namely, that it was overdrawn, and that they expected to assign something, and that the assignee expected to get something, and that they did not go through a "useless formality," from which it would follow that the intention of the parties must have been to transfer to Klingbeil the collateral, namely, book accounts, previously assigned to the bank. In this I think that the learned judge was in error; nor do I believe that his citation of Thomas v. Schumacher, 17 App. Div. 441, 45 N. Y. Supp. 166, lends any support to his views.

In the first place, the circumstances afford no proof that Fiber & Co. desired to transfer anything of value to Klingbeil; nor is there any evidence that they were aware of the exact state of their account. It is quite as reasonable, if not more so, to assume that they did not know the state of that account, and very likely that they assigned it to Klingbeil for what it might be worth on the eve of their own bankruptcy, in order to afford themselves relief from an importunate creditor. As there is no evidence that any new consideration passed for the transaction, one assumption is at least as reasonable as the other.

Coming, then, to the form of the transaction, I find that it differs materially from the one interpreted in the Thomas Case, supra. There the assignor had dealt for years with a banker, with whom he had an open running account, derived from the drawing of drafts and the discounting of bills of exchange secured by attached bills of lading. The instruments evidencing the transfer were an assignment reading, "For value received we hereby transfer and assign to . . . . . . . . . . . . [the assignee] all moneys due us by . . . . . . . . . . . . [the banker] balance on account," and a letter to the banker reading, "Please pay . . . . . . . . . . . . [the assignee], or order, the balance due us on account." From the language of these instruments and the surrounding circumstances, the learned General Term concluded that it was quite evident that the assignor intended to transfer to the plaintiffs (the assignees) the balance that would result from crediting the assignor with the

amount of the bills of exchange when the bills of lading were received by defendants for sale, regardless of the fact whether the immediate account was credited with the amount of those proceeds until they were actually sold. They say that this intention of the assignor was apparent from the face of the instrument and from the methods by which the business between the assignor and the bank was done. There is nothing to indicate the contrary, except the method of bookkeeping adopted by the banker, from which there did not appear to be a balance due to the assignor at the time. It must be remembered, as noted above, that this was a running continuous account, repeating, over and over again, a series of precisely similar transactions. Continuing, the court says:

"The instrument itself transfers and assigns to the plaintiffs 'all moneys due us by C. Schumacher & Co. of New York, balance on account.' *The language used is much broader than a mere transfer of what at that time appeared by bookkeepers' entries* to be payable from the defendants to Ernst, and we think is sufficiently broad to include all obligations in favor of Ernst against the defendants, and it was evidently the intention of Ernst to transfer such obligations of the defendants in his favor to the plaintiffs."

The case is elaborately reasoned; but enough appears, from the above citations from the opinion, to indicate that it differed materially from the case at bar. The language here is exceedingly narrow, and I am of the opinion that neither from the terms of the instrument, nor from the circumstances surrounding the transaction, are we justified in concluding that it was the intention of the assignors to transfer to the plaintiff herein book accounts deposited as collateral to secure their indebtedness to the bank, particularly in view of the absence of any indication, either in the instruments themselves or from the evidence of dealing, of the precise ultimate disposition to be made by the bank, as between it and the assignors, of the surplus of these book accounts, or of the proceeds to be derived therefrom, over and above the indebtedness to the bank.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

PAGE, J. concurs.

SEABURY, J. I dissent, upon the opinion of Mr. Justice Sturges in the court below.